1   **WO**

2

3

4

5

6                   IN THE UNITED STATES DISTRICT COURT

7               FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   Adam Shelton, Jr.,                    )      No. CV-1-07-560-PHX-MHM
                                          )
10              Plaintiff,                )      **ORDER**
                                          )
11  vs.                                   )
                                          )
12                                        )
    Glen Chorley,                         )
13                                        )
                Defendant.                )
14                                        )
    _____  )

15

16

17          Plaintiff Adam Shelton, Jr., who is a state prisoner confined in the Kern Valley State

18  Prison in Delano, California, filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

19  Pending before the Court is Defendant's Motion for Judgment on the Pleadings.  (Doc. # 21)

20  Having considered the parties' pleadings, the exhibits related thereto, as well as the

21  applicable law, the Court now enters its ruling.

22  **I.      BACKGROUND**

23          Plaintiff filed a Complaint on April 11, 2007, alleging that on March 22, 2006, as he

24  was going to the medical clinic for diabetic testing, he was stopped by Defendant Chorley

25  because he was wearing his personal shoes, in contravention of a recent memo.  Plaintiff

26  alleged that he attempted to explain to Defendant that had a verified medical chrono allowing

27  him to wear his shoes, but Defendant would not listen.  According to Plaintiff, Defendant

28  grabbed him, flipped him on his head, came down on his face and back with full body

weight, and injured his arm so severely that a metal rod had to be placed in his arm to hold and replace torn tendons and ligaments.  (Doc. # 1, p. 3 & attachment)

Plaintiff alleged that Defendant acted with deliberate indifference by denying him medical care on March 22, 2003 and refusing to verify his chrono in violation of the Eight Amendment.  Plaintiff also alleged that Defendant used excessive physical force against him in violation of the Eighth Amendment.  (Doc. # 1, p. 3)

On June 19, 2007, Magistrate Judge Sandra Snyder issued an order finding that Plaintiff failed to exhaust his claims prior to filing suit and recommending that the Complaint be dismissed without prejudice.  (Doc. # 8)  On July 18, 2007, Plaintiff filed objections to the Magistrate Judge's findings and recommendation, attaching as evidence his grievance forms and the replies thereto.  (Doc. # 9)  Thereafter, the Magistrate Judge issued an order vacating her June 19, 2007 order, finding that "Plaintiff's evidence and explanation raise an issue of fact regarding whether his appeal was rejected despite his compliance with the proper procedures and the appeals coordinator's requests for supplementation." (Doc. # 10, p. 2) The Magistrate Judge further found that Plaintiff's Complaint stated a cognizable claim for use of excessive force, but did not state a claim for deliberate indifference to Plaintiff's medical needs.  Accordingly, the Magistrate Judge provided Plaintiff the opportunity to amend his Complaint or proceed only on the excessive force claim.  (Doc. # 10, p. 5)  On October 8, 2007, Plaintiff filed a notice that he was willing to proceed only on the excessive force claim.  (Doc. # 11)

On November 12, 2008, Defendant filed the instant Motion for Judgment on the Pleadings.  Defendant argues that Plaintiff failed to exhaust his administrative remedies with respect to his excessive force claim.  Plaintiff filed a response, contending that he "did all [he] could to exhaust [the] administrative grievance process."  (Doc. # 25)  Attached as exhibits are copies of Plaintiff's grievance forms and the CDC's replies.

The exhibits show that on March 31, 2006, Plaintiff filed a 602 inmate appeal describing the alleged assault by Defendant:

- 2 -

> On 3/22/06, about 6:25 a.m., I was on my way to medical line, I do this 7 days a week, but this c/o Chorley stop me & told me that I could not go to medical because I had on my personal shoes on & the day before I was told by another petio officer & the M.T.A. that my chrono was still good.  So I ask c/o Chorley to just take me to medical & they will tell him, he told me no, so I ask to talk with the Sgt. & he told me no, then took me by my right arm, then spin me, pick me up & slam me on top of my head & that is unnecessary force and excessive force.

(Id., Ex. 1, p. 4)

On April 12, 2006, the appeals coordinator returned the grievance form with the notation, "Complete in blue or black ink.[1]  Explain further how excess force was allegedly used."  (Id., Ex. 1, p. 1)

On April 25, 2006, Plaintiff re-submitted a 602 appeals form, once again describing Defendant's refusal to allow him in the medical line wearing his personal shoes:

> On 3/22/06 at 6:25 a.m. I was released from my cell B5-118 on my way to the MTA Building.  I go 7 days a week. c/o Chorley stopped me this morning and told me I can't go to the MTA Building with personal shoes on!  I pulled out my shoe "Chrono" c/o Chorley still refused to let me go get my medication, so I asked to speak to a "Sgt" and he said No take it to your cell.  I turned on my way to the section I live in & at that time I was assaulted by c/o Chorley.  I was slamed (sic) on my head from behind for no reason at all.  Per the CCR Title 15 Sub-Section 3268(2)(2)(3) c/o Chorley is out of line.

(Id., Ex. 2, p. 1)

On May 17, 2006, the appeals coordinator returned the grievance form with the notation, "Provide clarification regarding your staff complaint.  How was your head "slamed" explain in detail what transpired afterwards.  Did anyone witness this?"  (Id., Ex. 4)  In response to this request, Plaintiff described the details of the alleged assault in a document dated May 28, 2006.  (Id., Ex. 4, p. 2, Ex. 5)

On a form titled "Inmate Request for Interview" and dated June 6, 2006, Plaintiff stated that he had not yet received a response to his grievance and inquired about the status of his appeal.  ((Id., Ex. 5)  On January 5, 2007, and again on February 5, 2007, the appeals coordinator returned Plaintiff's grievance form, explaining that there had been too great a

---

[1] Plaintiff alleged that he completed his first grievance in pencil because he "was in Ad-Seg lock-up" and therefore "only had a pencil at the time."  (Doc. # 1, p. 2, Doc. # 25, Ex. 1, p. 4)

1  time lapse between when the action or decision occurred and when Plaintiff filed his appeal

2  with no explanation why Plaintiff did not or could not file in a timely fashion.  (Id., Ex. 7;

3  Ex. 3, p. 2)  The appeals coordinator stated that Plaintiff's appeal would not be processed

4  further.  (Id., Ex. 3, p. 2)

5  **II.     LEGAL STANDARD**

6       The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring

7  a lawsuit with respect to prison conditions under § 1983 unless all available administrative

8  remedies have been exhausted.  See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d

9  1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).  A

10  prisoner must complete the administrative review process in accordance with the applicable

11  rules.  See Woodford v. Ngo, 548 U.S. 81, 92 (2006).  Exhaustion is required for all suits

12  about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief

13  offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

14       Exhaustion is an affirmative defense.  Jones v. Bock, 549 U.S. 199, 216 (2007).

15  Defendant bears the burden of raising and proving the absence of exhaustion.  Wyatt, 315

16  F.3d at 1119.  Because exhaustion is a matter of abatement in an unenumerated Rule 12(b)

17  motion, a court may look beyond the pleadings to decide disputed issues of fact.  Id. at

18  1119-20.  Further, a court has broad discretion as to the method to be used in resolving the

19  factual dispute.  Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369

20  (9th Cir. 1988) (quotation omitted).

21  **III.     EXHAUSTION PROCESS**

22       To satisfy § 1997e(a), an inmate must exhaust the grievance procedures established

23  by the prison in which the inmate is housed.  Jones, 549 U.S. at 218.  Under California law,

24  inmates may appeal "any departmental decision, action, condition, or policy which they can

25  demonstrate as having an adverse effect upon their welfare."  CAL. CODE REGS. tit. 15, §

26  3084.1(a).   The California Department of Corrections (CDC") grievance process is

27  comprised of a four-tiered hierarchy.  See CAL. CODE REGS. tit. 15, § 3084.5.  An inmate

28

1   must first attempt to informally resolve the problem with the "staff involved in the action or

2   decision being appealed." CAL. CODE REGS. tit. 15, § 3084.5(b). If that attempt is

3   unsuccessful, the inmate must submit a formal appeal on an approved form to the

4   correctional institution's appeals coordinator, id., and if unsuccessful there, submit another

5   formal appeal for a second level of review conducted by the warden or his or her designee.

6   See CAL. CODE REGS. tit. 15, §§ 3084.5© & 3084.5(e)(1). If the warden denies the appeal,

7   the inmate must then submit a formal appeal to the director of the CDC. See CAL. CODE

8   REGS. tit. 15, § 3084.5(e)(2). The director's decision "shall be final and exhausts all

9   administrative remedies available in the Department [of Corrections]." CALIFORNIA

10  DEPARTMENT OF CORRECTIONS OPERATIONS MANUAL § 54100.11. (Doc. # 67, ex. 6)

11  **III.  DISCUSSION**

12          Defendant argues that Plaintiff's claim of excessive force should be dismissed because

13  Plaintiff failed to exhaust his administrative remedies before filing suit. To support his

14  position, Defendant provides two declarations by CDC appeals personnel, who assert that the

15  grievances that the Inmate Appeals Office received and accepted for review between March

16  22, 2006 (the date of the alleged injury) and April 11, 2007 (the date Plaintiff filed suit) did

17  not contain an excessive physical force allegation against Defendant (Doc. # 21, pp.2, 4;

18  Billings Decl. ¶ 6, Ex. A-B), and that the Inmate Appeals Branch did not accept any appeals

19  from Plaintiff for a Director's Level Decision during this time (Doc. # 21, pp. 2, 5; Grannis

20  Decl. ¶ 5). Defendant concludes that the absence of any excessive force grievances at these

21  levels demonstrates that Plaintiff failed to comply with the PLRA's exhaustion requirements.

22  The Court disagrees.

23          To satisfy the exhaustion requirement, a grievance must alert prison officials to the

24  claims the plaintiff has included in the complaint. Porter v. Nussle, 534 U.S. 516, 525 (2002)

25  (purpose of exhaustion requirement is to give officials "time and opportunity to address

26  complaints internally before allowing the initiation of a federal case."). The "primary

27  purpose of a grievance is to alert prison officials to a problem, not to provide personal notice

28

1   to a specific official that he or she may be sued." Johnson v. Johnson, 385 F.3d 503, 522 (5[th]

2   Cir. 2004)  Here, Plaintiff's March 31, 2006 grievance (regardless of whether it was written

3   in pencil or ink), as well as his subsequent April 25, 2006 grievance, were sufficient to

4   provide the prison with a fair opportunity to address the problem and to put the prison on

5   notice of Plaintiff's potential excess force claim.

6           Moreover, the Court finds that Plaintiff exhausted all available administrative

7   remedies. See Porter, 534 U.S. at 524.  In considering Defendant's Motion for Judgment on

8   the Pleadings, the Court accepts all of Plaintiff's allegations of fact as true, Austad v. United

9   States, 386 F.2d 147, 149 (1967), and construes all reasonable inferences drawn from these

10  facts in Plaintiff's favor, General Conference Corp. of Seventh-Day Adventist

11  Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).  Plaintiff alleges, and the record

12  demonstrates, that he complied with the prison's grievance procedures.  On March 31, 2006,

13  nine days after the alleged injury, Plaintiff filed a grievance on a 602 inmate appeal form.

14  In response to the appeals coordinator's requests for supplementation, on April 25, 2006,

15  Plaintiff re-submitted a timely 602 appeal form, and on May 28, 2006, Plaintiff submitted a

16  timely detailed clarification of the alleged assault.  (Doc. # 25, Ex. 4, p. 2, Ex. 5).  On June

17  20, 2006, Plaintiff inquired about the status of his grievance, stating that he had not yet

18  received a response.  (Doc. # 25, Ex. 5)  Plaintiff's inquiry went unanswered until January

19  5, 2007, when the appeals coordinator informed Plaintiff that there had been" too great a time

20  lapse between when the action or decision occurred" and when Plaintiff  filed his appeal.

21  (Doc. # 25, Ex. 7)  On January 18, 2007, Plaintiff responded that he had placed his appeal

22  in the housing unit's appeals box in April "within the requisite time" and therefore the

23  appeals coordinator's "receipt of it on December 28, 2006" was "not [his] fault."  (Doc. # 25,

24  Ex. 7)  On February 5, 2007, the appeals coordinator once again responded that there had

25  been "too great a time lapse" and stated that the appeal would "not be processed further."

26  Under the facts presented here, the Court finds that Plaintiff complied with the prison's

27  grievance procedures and exhausted his administrative remedies.

28

1   Accordingly,

2   **IT IS ORDERED** denying Defendant's Motion for Judgment on the Pleadings. (Doc.

3   # 21)

4

5

6   DATED this 26th day of September, 2009.

7

8

9   _____

10   Mary H. Murguia
    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28