1   **WO**

2

3

4

5

6                  IN THE UNITED STATES DISTRICT COURT

7              FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   ADAM SHELTON, JR.,                )    No. 1:07-CV-560-MHM
                                       )
10          Plaintiff,                 )    **ORDER**
                                       )
11   vs.                               )
                                       )
12                                     )
     GLEN CHORLEY,                     )
13                                     )
            Defendant.                 )
14                                     )
                                       )
15   _____ )

16

17        Currently before this Court are Defendant Glen Chorley's Motion for Summary

18   Judgment, (Doc. 46), and Motion to Strike Reply, (Doc. 57); and Plaintiff Adam Shelton,

19   Jr.'s Motion to Ask this Court to Deny Defendant['s] Motion for Summary Judgment. (Doc.

20   50).  Having carefully considered the Parties' briefs and determined that oral argument is

21   unnecessary, the Court issues the following Order.

22   **I.     Procedural History**

23        On April 17, 2007, Plaintiff Adam Shelton, Jr., who is an inmate at Kearn Valley State

24   Prison ("KVSP"), filed a Complaint alleging Eighth Amendment violations against

25   Defendant correctional officer Glen Chorley. (Doc. 1).  Specifically, the Complaint alleged

26   that Defendant used excessive force against Plaintiff and acted with deliberate indifference

27   towards Plaintiff by refusing to provide Plaintiff with medical care.  (Id.).  On October 25,

28   2007, Magistrate Judge Sandra M. Snyder issued an order dismissing Plaintiff's deliberate

1   indifference claim, but allowing his excessive force claim to proceed. (Doc. 10). Thereafter,

2   Defendant moved for judgment on the pleadings, arguing that Plaintiff had failed to exhaust

3   his administrative remedies. (Doc. 21). On September 29, 2009, the Court issued an Order

4   denying Defendant's motion. (Doc. 33).

5         After the close of discovery, on April 29, 2010, Defendant filed the instant motion for

6   Summary Judgment along with his Statement of Undisputed Facts and accompanying

7   exhibits. (Doc. 46). Plaintiff responded on June 10, 2010, by filing his Motion to Ask this

8   Court to Deny Defendant['s] Motion for Summary Judgment. (Doc. 50).[1]  On July 1, 2010,

9   Defendant filed his reply and objections to Plaintiff's evidence. (Docs. 54 & 55).  Plaintiff

10  replied to Defendant's evidentiary objections on August 3, 2010. (Doc. 57).  Finally, on

11  August 6, 2010, Defendant moved to strike Plaintiff's reply to Defendant's evidentiary

12  objections, arguing it was an impermissible surreply. (Doc. 57).

13  **II.    Facts**

14        The following relevant material facts, unless otherwise noted, are not in dispute.[2]

15

16      [1]The Court will treat Plaintiff's motion as a response to Defendant's summary

17  judgment motion, as a careful reading of Plaintiff's motion shows that Plaintiff intended his

18  filing as a response.

19      [2]In his reply, Defendant notes correctly that Plaintiff's response does not comply with

20  Eastern District of California local rule 260(b), which states that any party opposing a motion for summary judgment or summary adjudication "reproduce the itemized facts in the

21  Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading,

22  affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." E. D. Cal. R. 260(b).  As Defendant points out, at least one Eastern

23  District of California court has held that failure to comply with this rule is sufficient grounds to grant summary judgment in favor of a defendant. Richardson v. Runnels, 2007 U.S. Dist.

24  LEXIS 12288 (E.D. Cal. Feb. 22, 2007).  However, in reviewing and reversing the district

25  court's decision in Runnels, the Ninth Circuit held that a defendant still must meet his burden of showing that the undisputed facts entitle him to relief, even when the plaintiff has not

26  complied with local rule 260(b). Richardson v. Runnels, 2010 U.S. App. LEXIS 695 (9th

27  Cir. Jan. 12, 2010).  Accordingly, Plaintiff's failure to comply with local rule 260(b) is not dispositive.

28

1   Plaintiff Adam Shelton, Jr. (B-97350) is a prisoner in the custody of the California
2   Department of Corrections and Rehabilitation (CDCR), and was housed at KVSP during the
3   time alleged in the Complaint.  (Defendant's Statement of Undisputed Facts ("DSOF"), ¶1).
4   Also during the time alleged in Plaintiff's Complaint, CDCR employed Defendant Glen
5   Chorley as correctional officer at KVSP's Facility B.  (Id., ¶2).

6        On February 27, 2006, KVSP  issued a memorandum ("Memo") stating that all
7   inmates at KVSP must wear state-issued "soft shoes," but allowing that exceptions to the
8   policy would be made when medically necessary.  (Doc. 46, Exh. E.).   On the morning of
9   March 22, 2006, KVSP assigned Defendant to monitor inmates coming to the medical clinic
10  at Facility B.  (DSOF, ¶4).  As Plaintiff approached the medical clinic, Defendant saw that
11  Plaintiff was wearing unauthorized shoes.  (Id. at ¶6).  When Plaintiff came onto Facility B's
12  patio—a concrete walkway in front of Facility B's administrative officers—Defendant
13  approached Plaintiff and told Plaintiff that he was wearing unauthorized shoes.  (Id. at ¶7).
14  When Plaintiff disputed Defendant's claim, Defendant produced and showed Plaintiff a copy
15  of the Memo.  (Id. at ¶8).  Defendant then ordered Plaintiff to return to his cell and put on
16  authorized shoes.  (Id. at ¶9).  Plaintiff refused Defendant's command, and after Defendant
17  repeated himself, Plaintiff refused once again, remaining on the patio.  (Id. at ¶10–11). In
18  refusing Defendant's orders, Plaintiff, who was not in restraints at the time, stood
19  approximately three feet away from Defendant and stated in a loud and agitated tone that
20  KVSP's ban on non-prison approved shoes did not apply to him.  (Id. at ¶12).   Plaintiff's
21  refusal to leave the patio created an immediate threat to security, as it required Defendant,
22  and possibly other officers, to employ physical force to involuntarily escort Plaintiff off of
23  the patio.  (Id. at ¶13).  In light of Plaintiff's agitated state, Defendant also worried that
24  Plaintiff would attempt to assault Defendant or other officers coming to Defendant's
25  assistance.  (Id.).

26       After it became clear that Plaintiff would not leave the patio, Defendant attempted to
27
28

grab Plaintiff's right arm.  (<u>Id.</u> at ¶14).   Plaintiff responded by suddenly turning his back on Defendant. (<u>Id.</u> at ¶16).  Defendant, along with Officer C. Hartsfield, who witnessed the incident, both perceived Plaintiff's sudden movement as an attempt to strike Defendant. (<u>Id.</u> at ¶17).    Plaintiff denies that he attempted to strike Defendant. (Doc. 46, exh. G, p. 14). In response, Defendant placed both arms on Plaintiff's rear upper body and used his body weight to take Plaintiff down to the ground.   (DSOF, ¶ 18). Once on the ground, Defendant placed his knee on Plaintiff's back and held Plaintiff's right arm behind his back.  (<u>Id.</u> at ¶20).  As Defendant held Plaintiff to the ground, Plaintiff attempted to pull his right arm out of Defendant's grasp and otherwise struggled.   (<u>Id.</u> at ¶21). Several officers commanded Plaintiff to stop resisting, but Plaintiff ignored them, continuing to twist his body while simultaneously stating that we was not resisting. (<u>Id.</u> at ¶22). Plaintiff claims he continued to move after being ordered to stop because Defendant was twisting his arm in an especially painful fashion. (Doc. 46, exh. G, p. 14).  Eventually Defendant was able to handcuff Plaintiff, and thereafter officers Rivera and Gomez escorted Plaintiff to the Facility B program office.   (DSOF, ¶23–24).

On March 22, 2006, Plaintiff underwent a physical evaluation to check for any injuries sustained during the incident with Defendant.     (<u>Id.</u> at ¶30).  According to the evaluation, Plaintiff suffered abrasions to his left knee, head, wrist, tongue, and elbow. (<u>Id.</u> at ¶31).   These injuries healed on their own, within two weeks, and without the need for stitches. (<u>Id.</u> at ¶32).   The injury report also shows that Plaintiff complained of pain in his right shoulder, right forearm, and the back of his head.  (<u>Id.</u>).  Since the March 22, 2006 incident, Plaintiff has complained of continuing headaches and shoulder pain.  Plaintiff's headaches and shoulder pain were both caused, at least in part, by pre-existing conditions; high blood pressure and sever degenerative arthritis, respectively.  (<u>Id.</u> at ¶36–39).  Plaintiff asserts these conditions were exacerbated by the incident.  Defendant was also injured, suffering abrasions to his left and knee and elbow.  (<u>Id.</u> at ¶41).

As a result of the March 22, 2006 incident, correctional staff issued a rules violation charging Plaintiff with attempted battery of a peace officer.  (<u>Id.</u> at  ¶42). Plaintiff received

1  a hearing on the disciplinary charge and was found guilty.  (<u>Id.</u> at ¶43).  As a result of the
2  guilty finding, Plaintiff received a penalty of 150 days of credit forfeiture.   (<u>Id.</u> at ¶44).

3  **III.    STANDARD OF REVIEW**

4          A court must grant summary judgment "if the pleadings, the discovery and disclosure
5  materials on file, and any affidavits show that there is no genuine issue as to any material fact
6  and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u>
7  <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).   Under summary judgment
8  practice, the movant bears the initial responsibility of presenting the basis for its motion and
9  identifying those portions of the record, together with affidavits, that it believes demonstrate
10  the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323; <u>Devereaux v.</u>
11  <u>Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

12          If the movant meets its burden with a properly supported motion, the burden then
13  shifts to the nonmovant to present specific facts that show there is a genuine issue for trial.
14  Fed. R. Civ. P. 56(e); <u>Auvil v. CBS "60 Minutes"</u>, 67 F.3d 816, 819 (9th Cir. 1995); <u>see</u>
15  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).   The nonmovant need not
16  establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed
17  factual dispute be shown to require a jury or judge to resolve the parties' differing versions
18  of the truth at trial." <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89
19  (1968).  By affidavit or as otherwise provided by Rule 56, the nonmovant must designate
20  specific facts that show there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249;
21  <u>Devereaux</u>, 263 F.3d at 1076.  The nonmovant may not rest upon the pleadings' mere
22  allegations and denials, but must present evidence of specific disputed facts.  <u>See</u> <u>Anderson</u>,
23  477 U.S. at 248.

24          At summary judgment, the judge's function is not to weigh the evidence and
25  determine the truth but to determine whether there is a genuine issue for trial.  <u>Id.</u> at 249.  In
26  its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the
27  nonmovant's favor.  <u>Id.</u> at 255..

28  **IV.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1   Defendant argues that summary judgement is appropriate on three grounds:(1)

2   Plaintiff's claim is barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994); (2) the force used

3   against Plaintiff was not excessive;  and (3) Defendant is entitled to qualified immunity.

4       **A.    <u>Heck</u>**

5   The Court turns first to Defendant's <u>Heck</u> argument.  In <u>Heck</u> the Supreme Court held

6   that, where a plaintiff's successful prosecution of a § 1983 claim would imply the invalidity

7   of a sentence or conviction, the plaintiff must first prove that the underlying conviction has

8   been has been reversed on direct appeal, expunged by executive order, declared invalid by

9   an authorized state tribunal, or called into question by the issuance of a writ of habeas corpus.

10  "<u>Heck</u>, in other words, says that if a criminal conviction arising out of the same facts stands

11  and is fundamentally inconsistent with the unlawful behavior for which section 1983

12  damages are sought, the 1983 action must be dismissed."  <u>Smithart v. Towery</u>, 79 F.3d 951,

13  952 (9th Cir. 1996)  In applying <u>Heck,</u> a district court therefore must "consider whether a

14  judgment in favor of the plaintiff would necessarily imply the invalidity of [the plaintiff's]

15  conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can

16  demonstrate that the conviction or sentence has already been invalidated."  512 U.S. at

17  486–87; <u>see</u> (*per curiam*).

18  Plaintiff's § 1983 claim stems entirely from the physical altercation between Plaintiff

19  and Defendant on the Facility B Patio.  Plaintiff alleges that Defendant used excessive force

20  in wrestling him to and holding him on the ground.  As a result of this incident, however, the

21  KVSP correctional staff charged Plaintiff with attempted battery of a peace officer.  Plaintiff

22  received a hearing on this disciplinary charge and was found guilty, receiving a 150 day

23  credit forfeiture as a penalty. In so finding, the hearing officer credited as true Defendant's

24  version of the incident, wherein Plaintiff initiated the physical altercation by attempting to

25  strike Defendant and Plaintiff continued to resist and struggle after Defendant had brought

26  Plaintiff to the ground.  (Doc. 46, Exh. B).  The result of a prison disciplinary hearing

27  constitutes a conviction for purposes of applying <u>Heck</u>.  <u>Edwards v. Balisok</u>, 520 U.S. 641,

28  646 (1997). Accordingly, Plaintiff's § 1983 claim must be dismissed if it calls into question

1  the validity of either his conviction for attempted battery or resulting sentence.  <u>Id.</u>; <u>see</u>

2  <u>Sharp v. Morrison</u>, 2010 U.S. Dist. LEXIS 72649, *13–15 (E.D. Cal. July 19, 2010).

3        Defendant argues that Plaintiff's claim is barred by <u>Heck</u> because a judgment in

4  Plaintiff's favor would necessarily characterize Plaintiff's actions as self-defense, calling into

5  question the validity of the attempted-battery conviction.  This Court disagrees.  Attempted

6  battery and excessive force are not mutually exclusive.  In other words, it is possible that

7  Plaintiff attempted to batter Defendant *and* that Defendant used excessive force in subduing

8  Plaintiff.  <u>See</u> <u>Gabalis v. Plainer</u>, 2010 U.S. Dist. LEXIS 124121, *20 (E.D. Cal. Nov. 22,

9  2010) ("[I]t is possible for defendants to have used excessive and for plaintiff to have

10  attempted to assault a correctional officer."); <u>Hackworth v. Rangel</u>, 2009 U.S. Dist. LEXIS

11  90468, 10-11 (E.D. Cal. Sept. 30, 2009) (finding that a plaintiff's disciplinary hearing

12  conviction for conduct that could lead to violence did not bar his excessive force claim); <u>but</u>

13  <u>see</u> <u>Sharp</u>, 2010 U.S. Dist. LEXIS 72649 at *14–15 ("Plaintiffs's theory of being the victim

14  would invalidate the bases underlying the [Rules Violation Report] which found that Plaintiff

15  was the aggressor. Plaintiff's remedy was to proceed by writ of habeas corpus, not  a § 1983

16  action.").  Additionally, the attempted battery in this case—Plaintiff's attempt to strike

17  Defendant—occurred before Defendant had applied any of the force at issue in this case.  <u>See</u>

18  <u>Smith v. City of Hemet</u>, 394 F.3d 689, 696 (9th Cir. 2005)("Under Heck, Smith would be

19  allowed to bring a § 1983 action, however, if the use of excessive force occurred subsequent

20  to the conduct on which his conviction was based.").  Because Plaintiff's claim  does not

21  necasrilly imply the invalidity of his guilty conviction and resulting loss of credit, dismissal

22  is not proper under <u>Heck</u>.

23        **B.      Excessive Force**

24        The use of excessive force against inmates at a correctional facility is prohibited by

25  the Eight Amendment to the Constitution's prohibition against cruel and unusual punishment.

26  <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992); U.S. CONST. amend. VIII ("Excessive bail shall

27  not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").

28  When a prison official stands accused of using excessive force, the key inquiry is "whether

1   force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

2   sadistically to cause harm." Id. at 6–7. "The 'malicious and sadistic' standard, as opposed

3   to the 'deliberate indifference' standard applicable to most Eighth Amendment claims, is

4   applied to excessive force claims because prison officials generally do not have time to

5   reflect on their actions in the face of risk of injury to inmates or prison employees." Gabalis,

6   2010 U.S. Dist. LEXIS 124121 at *22 (citing Whitley v. Albers, 475 U.S. 312, 320–21

7   (1986)).  In determining whether the application of force was excessive, a court considers

8   factors such as:  "(1) the need for application of force; (2) the extent of injuries; (3) the

9   relationship between the need for force and the amount of force used; (4) the nature of the

10  threat reasonably perceived by prison officers; and (5) efforts made to temper the severity

11  of a forceful response."  Id. (citing Hudson, 530 U.S. at 7). "The Eighth Amendment's

12  prohibition of cruel and unusual punishment necessarily excludes from constitutional

13  recognition *de minimis* uses of physical force, provided that the use of force is not of a sort

14  repugnant to the conscience of mankind."  Hudson, 503 U.S. at 10 (internal quotations

15  omitted).

16          Defendant argues that his use of force was not malicious, but instead was a good-faith

17  effort to maintain discipline.  The evidence marshaled by Defendant supports this assertion.

18  The facts show that Plaintiff's use of force was not unprovoked.  Plaintiff became agitated

19  and insubordinate when Defendant asked Plaintiff to leave the patio and  put on proper

20  footwear.  Plaintiff's refusal to obey Defendant's orders created a security threat, as it

21  required Defendant to handcuff Plaintiff and involuntarily remove him from the patio.

22  Additionally, Plaintiff suddenly turned his back to Defendant, an action which Defendant and

23  Officer Hartsfield, who witnessed the incident, saw as an attempt to strike Defendant.

24  Defendant responded by taking Plaintiff to the ground and attempting to place Plaintiff in

25  handcuffs.  Plaintiff, however, resisted Defendant's attempts to place him in cuffs.

26  Defendant and Officers Hartsfield and Tripp all state in their declarations that Defendant

27  used only the minimum amount of force necessary to gain control over Plaintiff and prevent

28  further injury to Plaintiff, Defendant, and other inmates or officers.  And, it is undisputed that

1   Defendant did not punch or kick Plaintiff, or use his baton or pepper spray during the March

2   22 altercation.  Finally, Defendant's evidence show that Plaintiff did not suffer sever injuries

3   as a result of Defendant's conduct.  The majority of his injuries were scrapes and bruises that

4   healed on their own within weeks.   Additionally, the pain in Plaintiff's shoulder and head

5   was not caused solely by this incident, but instead was at least partly the product of pre-

6   existing medical conditions.

7        The foregoing facts do not permit a finding that Defendant used excessive force

8   against Plaintiff.  To the contrary, they strongly suggest that the force applied by Defendant

9   was reasonable under the circumstances and in furtherance of the legitimate penological

10  interest of maintaining order and safety.  Bull v. City and County of San Francisco, 595 F.3d

11  964, 974 (9th Cir. 2010) ("[T]he penological interest in security and safety is applicable in

12  all correction facilities.").  The Court therefore finds that Defendant has met his burden of

13  demonstrating there is no genuine issue as to any material fact and that  he is entitled to

14  judgment as a matter of law.  Having so done, the burden shifts to Plaintiff to produce

15  evidence that demonstrates the existence of a disputed material fact.  To the extent Plaintiff

16  disputes Defendant's facts, however, he has done so only through conclusory statements and

17  un-authenticated documents attached to his response motion.  As Defendant points out in his

18  objections to Plaintiff's evidence, these statements do no appear to meet the minimum

19  standard for admissibility of evidence on summary judgment.  See Anderson v. Liberty

20  Lobby, Inc., 477 U.S. 242, 255 (1986) (stating that the standard for admitting evidence at

21  summary judgment same as admitting evidence at trial); Hal Roach Studios, Inc. v. Richard

22  Feiner & Co., Inc., 896 F.2d 1542, 1550-51 (9th Cir. 1990) (noting that documentary

23  evidence must be properly authenticated, such as by declaration).  Even assuming, however,

24  that Plaintiff's evidence is properly before this Court, he has not demonstrated the presence

25  of a disputed issue of material fact.

26        Plaintiff argues that if he had attempted to strike Defendant, Plaintiff would have been

27  shot by Defendant or another correctional officer.   The Court finds this argument

28  unpersuasive, as it suggests that correctional officers routinely use deadly force at even the

1    slightest provocation by inmates.  Such an assertion is clearly mistaken, as correctional

2    officers routinely apply less than lethal force to control inmates and to address threatening

3    or dangerous situations.  Additionally, whether or not Plaintiff attempted to strike Defendant

4    is not material.  Plaintiff's insubordination, agitated state, and decision to quickly turn his

5    body away from Defendant created a potentially dangerous situation necessitating the use of

6    force like that applied by Defendant.   Likewise, Plaintiff's argument that he was not out of

7    compliance with KVSP's footwear policy and that Defendant misunderstood the contents of

8    the Memo is also irrelevant to the merits of his excessive force claim.  Plaintiff's belief in the

9    correctness of his position did not give Plaintiff the right to disobey Defendant's orders and

10   does not therefore explain why the application of force was unnecessary or excessive.

11          Furthermore, Plaintiff asserts Defendant twisted his arm in a particularly painful

12   manner.  Assuming this is true, it does not change the fact that Plaintiff has not produced

13   evidence showing the level of force used on his arm was greater than was called for, let alone

14   malicious or applied with the intent to harm.  Plaintiff also admits that he was resisting

15   Defendant's attempts to cuff him, an action which clearly necessitated Defendant's continued

16   holding and twisting of Plaintiff's arm and which is likely to be painful under any

17   circumstance. Finally, in his response brief, Plaintiff admits that the March 22, 2006 incident

18   did not cause his head and shoulder pain, but argues that the incident greatly exacerbated his

19   pain in those areas.  The severity of the injury is only one of many factors that may be

20   considered as part of an excessive force analysis.  More importantly, it is not surprising that

21   the force applied by Defendant exacerbated Plaintiff's preexisting injuries; such an outcome

22   is to be expected when physical force is applied.  Accordingly, the fact that Plaintiff's pre-

23   existing injuries were aggravated does not alone create a material issue of fact concerning

24   the reasonableness of the force applied in this case.

25          The Court therefore finds that Plaintiff has not demonstrated the presence of an issue

26   of a disputed issue of material fact concerning his excessive force claim, and Defendant's

27   motion for summary judgment is granted.  Because Defendant did not act unconstitutionally,

28   the Court need to consider Defendant's immunity arguments.

## IV.    DEFENDANT'S MOTION TO STRIKE

As the Court noted in the Procedural History section of this Order, Defendant objected to the evidence Plaintiff attached to his Motion to Ask this Court to Deny Defendant['s] Motion for Summary Judgment.  Plaintiff, in turn, filed a response to these evidentiary objections entitled, Plaintiff's Reply to Defendant's Objections to Plaintiff['s] Motion to Ask this Court to Deny Defendant's Summary Judgment Motion.  (Doc. 56).  In his Motion to Strike, Defendant asks that this Court strike Plaintiff's response as an improper surreply to Defendant's Motion for Summary Judgment.  Although Defendant's motion appears to be meritorious, the Court will deny it, as consideration of Plaintiff's surreply has not altered the Court's conclusions in this matter.  See Backus v. Gissel, 2010 U.S. Dist. LEXIS 110133 (D. Ariz. Oct. 14, 2010) ("While [defendant] is  technically correct, the Court will nonetheless permit the filing and deny the motion to strike because consideration of the arguments in the surreply do not alter the Court's conclusions.").

**Accordingly,**

**IT IS HEREBY ORDERED** granting Defendant's Motion for Summary Judgment. (Doc. 46).

**IT IS FURTHER ORDERED** denying Defendant's Motion to Strike Plaintiff's Motion to Strike Reply. (Doc. 57).

**IT IS FURTHER ORDERED** denying Plaintiff Adam Shelton, Jr.'s Motion to Ask this Court to Deny Defendant['s] Motion for Summary Judgment.  (Doc. 50).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 31st day of March, 2011.

_____
Mary H. Murguia
United States District Judge